UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MARIAN CALDWELL POWELL, individually, and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>AFNI, INC.,<br><br>  Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Marian Caldwell Powell ("Plaintiff"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through her attorneys, brings this Class Action Complaint against Afni, Inc. ("Afni") and complains and alleges upon personal knowledge as to herself and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiff brings this class action against Afni for its failure to secure and safeguard her and approximately 261,449 other individuals' personally identifiable information ("PII"), including names, addresses, dates of birth, and Social Security numbers.

2. Afni is a company that provides customer engagement services to its clients. This includes debt collection services and customer growth services.

3. On or about June 7, 2021, unauthorized individuals gained access to Afni's network systems and accessed the PII of Plaintiff and Class members (the "Data Breach").

4. Afni owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against

unauthorized access and disclosure. Afni breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect their PII from unauthorized access and disclosure.

5. As a result of Afni's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of herself and all persons whose PII was exposed as a result of the Data Breach, which Afni learned of on or about June 7, 2021.

6. Plaintiff, on behalf of herself and all other Class members, asserts claims for negligence, negligence per se, breach of implied contract, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

**PARTIES**

7. Plaintiff Marian Caldwell Powell is an Illinois resident. She received a letter from Afni notifying her that her PII was accessed in the Data Breach. Plaintiff Caldwell Powell would not have allowed Afni to have access to her PII if she had known Afni would not adequately protect her PII.

8. Defendant Afni, Inc. is an Illinois Corporation. Afni's principal place of business is located at 1310 Martin Luther King Jr. Dr., Bloomington, Illinois 61701.

**JURISDICTION AND VENUE**

9. The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a

citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Afni because Afni has its principal place of business in Illinois.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Afni's principal place of business is located in McLean County, Illinois.

12. The Peoria Division is the proper location for the filing of this action as a substantial amount of the events leading to the causes of action in this complaint arose in McLean County, Illinois, and Afni's principal place of business is located in McLean County, Illinois.

## **FACTUAL ALLEGATIONS**

### *Overview of Afni*

13. Afni began its business as a consumer collection agency in 1936 and now provides consumer collection and other customer engagement services.[1] The company has approximately 10,000 employees and has locations in Alabama, Arizona, Illinois, Kentucky, and the Phillipines.[2]

14. In the regular course of its business, Afni collects and maintains the PII of its clients and its clients' customers.

15. Afni's website contains a Privacy Policy which states, "Afni, Inc. is committed to protecting any personal information that you may provide to us."[3]

16. Plaintiff and Class members are, or were, customers of Afni's clients and entrusted Afni with their PII through Afni's clients.

---

[1] *About Afni*, AFNI, INC., https://afni.com/about (last accessed July 25, 2022).
[2] *Id.*
[3] *Privacy Policy*, AFNI, INC., https://afni.com/privacy-policy (last accessed July 25, 2022).

*The Data Breach*

17. On or before June 7, 2021, an unauthorized individual, or unauthorized individuals, gained access to Afni's network systems and had access to files on Afni's network systems. Afni's letter to consumers does not specify exactly when the Data Breach began, just that it began "on or before June 7, 2021."[4]

18. Afni did not begin to notify government agencies or the public about the Data Breach until over a year after the discovery of the breach, in or about July of 2022. Thus, Plaintiff's and Class members' PII was in the hands of cybercriminals for over a year before they were warned that the Data Breach may have affected this information.

19. The notice that Afni sent to those affected by the breach states the information that was disclosed included persons' "name, address, social security number, and date of birth."[5] The letter continues to state, "The confidentiality, privacy, and security of information in our care are among our highest priority."[6]

*Afni Knew that Criminals Target PII*

20. At all relevant times, Afni knew, or should have known, that the PII that it collected was a target for malicious actors. Despite such knowledge, Afni failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII from cyber-attacks that Afni should have anticipated and guarded against.

---

[4] *Afni Data Breach Notice to Consumers*, OFFICE OF THE VERMONT ATTORNEY GENERAL, https://ago.vermont.gov/blog/2022/07/11/afni-data-breach-notice-to-consumers/?utm_source=rss&utm_medium=rss&utm_campaign=afni-data-breach-notice-to-consumers
[5] *Id.*
[6] *Id.*

21. It is well known among companies that store sensitive personally identifying information that sensitive information—such as the Social Security numbers ("SSNs") stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[7]

22. PII is a valuable property right.[8] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[9] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[10] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

23. As a result of their real and significant value, identity thieves and other cyber criminals have openly posted credit card numbers, SSNs, PII, and other sensitive information directly on various Internet websites making the information publicly available. This information

---

[7] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[8] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), htttps://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[9] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[10] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

from various breaches, including the information exposed in the Data Breach, can be readily aggregated and become more valuable to thieves and more damaging to victims.

24. Consumers place a high value on the privacy of that data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[11]

25. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

### *Theft of PII Has Grave and Lasting Consequences for Victims*

26. Theft of PII is serious. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[12]

27. Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[13] According to Experian, one of the

---

[11] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[12] *See* Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed July 25, 2022).

[13] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license

largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[14]

28. With access to an individual's PII, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[15]

29. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[16]

---

or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id*.

[14] *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last accessed July 25, 2022).

[15] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, IDENTITYTHEFT.GOV https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed July 25, 2022).

[16] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/ (last accessed July 25, 2022).

30. Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

31. Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (*e.g.*, name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[17]

32. There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[18]

33. It is within this context that Plaintiff and Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

*Damages Sustained by Plaintiff and the Other Class Members*

34. Plaintiff and Class members have suffered injury and damages, including, but not limited to: (i) a substantially increased risk of identity theft—risk justifying expenditures for

---

[17] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.
[18] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

## CLASS ACTION ALLEGATIONS

35. This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

36. Plaintiff brings this action on behalf of herself and all members of the following Class of similarly situated persons:

> All persons whose PII was accessed by unauthorized persons in the Data Breach, including all who were sent a notice of the Data Breach.

37. Excluded from the Class is Afni, Inc. and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

38. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

39. The members of the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. Afni reported to the Maine Attorney General that approximately 261,449 persons' information was exposed in the Data Breach.[19]

---

[19] *Data Breach Notifications*, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/22f470bc-511d-4067-911d-bbf0b230e9c6.shtml (last accessed July 25, 2022).

9

40. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

   a. Whether Afni had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' PII from unauthorized access and disclosure;

   b. Whether Afni failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' PII;

   c. Whether an implied contract existed between Class members and Afni, providing that Afni would implement and maintain reasonable security measures to protect and secure Class Members' PII from unauthorized access and disclosure;

   d. Whether Afni breached its duties to protect Plaintiff's and Class members' PII; and

   e. Whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

41. Afni engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

42. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Afni, as described

herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

43. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that she has no interests adverse to, or that conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

44. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Afni, so it would be impracticable for Class members to individually seek redress from Afni's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

45. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

46. Afni owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

47. Afni knew the risks of collecting and storing Plaintiff's and Class members' PII and the importance of maintaining secure systems. Afni knew of the many data breaches that targeted companies that stored PII, including itself, in recent years.

48. Given the nature of Afni's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, Afni should have identified the vulnerabilities to their systems and prevented the Data Breach from occurring.

49. Afni breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.

50. It was reasonably foreseeable to Afni that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

51. But for Afni's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

52. As a result of Afni's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members

have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

## COUNT II
## NEGLIGENCE PER SE

53. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Afni's duties arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as Afni, of failing to employ reasonable measures to protect and secure PII.

55. Afni violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and Class members' PII and not complying with applicable industry standards. Afni's conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and the other Class members.

56. Afni's violation of Section 5 of the FTCA constitutes negligence per se.

57. Afni and Class members are within the class of persons that Section 5 of the FTCA was intended to protect.

58. The harm occurring as a result of the Data Breach is the type of harm Section 5 of

the FTCA weas intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and Class members as a result of the Data Brach.

59. It was reasonably foreseeable to Afni that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

60. The injury and harm that Plaintiff and Class members suffered was the direct and proximate result of Afni's violations of Section 5 of the FTCA. Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

## COUNT III
## BREACH OF IMPLIED CONTRACT

61. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

62. In connection with the dealings Plaintiff and Class Members had with Afni, Plaintiff and Class members entered into implied contracts with Afni.

63. Pursuant to these implied contracts, Plaintiff and Class members provided Afni with their PII, directly or indirectly, in order for Afni to provide services. In exchange, Afni agreed to, among other things, and Plaintiff and Class members understood that Afni would: (1) provide services to Plaintiff and Class member; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII; and (3) protect Plaintiff's and Class members PII in compliance with federal and state laws and regulations and industry standards.

64. The protection of PII was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Afni, on the other hand. Indeed, Afni was clear in its Privacy Policy, and Plaintiff understood, that Afni supposedly respects and is committed to protecting customer privacy.

65. Had Plaintiff and Class members known that Afni would not adequately protect its clients' customers' and former customers' PII, they would not have provided Afni or Afni's clients with their PII.

66. Plaintiff and Class members performed their obligations under the implied contracts when they provided Afni with their PII, either directly or indirectly.

67. Afni breached its obligations under their implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class members' PII in a manner that complies with applicable laws, regulations, and industry standards.

68. Afni's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the injuries that Plaintiff and all other Class members have suffered from the Data Breach.

69. Plaintiff and all other Class members were damaged by Afni's breach of implied contracts because: (i) they paid—directly or indirectly—for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; and (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

## COUNT IV
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFA")
## 815 ILCS 505/2, *et seq*.

70. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71. Afni offered and continues to offer customer engagement services in the State of Illinois.

72. Afni obtained Plaintiff's and Class members' PII in connection with Afni's customer engagement services.

73. Afni engaged in unlawful and unfair practices in violation of the ICFA by failing to implement and maintain reasonable security measures to protect and secure its

patients' PII in a manner that complied with applicable laws, regulations, and industry standards.

74. Afni makes explicit statements to its patients that their PII will remain private, as evidenced by its Privacy Policy.

75. Afni further violated the ICFA by failing to notify its clients and its clients' customers of the data breach in a timely manner. The Illinois Personal Information Protection Act requires entities that experience a data breach to notify Illinois residents "in the most expedient time possible and without unreasonable delay." 815 ILCS 530/10. Violation of the Illinois Personal Information Protection Act constitutes an unlawful practice under the ICFA. 815 ILCS 530/20.

76. Due to the Data Breach, Plaintiff and Class members have lost property in the form of their PII. Further, Afni's failure to adopt reasonable practices in protecting and safeguarding its patients' PII will force Plaintiff and Class members to spend time or money to protect against identity theft. Plaintiff and Class members are now at a higher risk of identity theft and other crimes. This harm sufficiently outweighs any justifications or motives for Afni's practice of collecting and storing PII without appropriate and reasonable safeguards to protect such information.

77. As a result of Afni's violations of the ICFA, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the

effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

## PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in her favor and against Afni as follows:

A.  Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.  Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.  Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent Afni from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D.  Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.  Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.  Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: July 25, 2022					Respectfully submitted,

						/s/ Ben Barnow
						Ben Barnow
						Anthony L. Parkhill
						Riley W. Prince*
						**BARNOW AND ASSOCIATES, P.C.**
						205 West Randolph Street, Ste. 1630
						Chicago, IL 60606
						Tel: 312.621.2000
						Fax: 312.641.5504
						b.barnow@barnowlaw.com
						aparkhill@barnowlaw.com
						rprince@barnowlaw.com

						*admission to be sought